IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:22-CV-00007-KDB

| | |
|---|---|
| JAMES SMOAK, | |
| Plaintiff, | |
| v. | **ORDER** |
| KILOLO KILAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | |

**THIS MATTER** is before the Court on Plaintiff James Smoak's Motion for Summary Judgment (Doc. No. 11) and Defendant's Motion for Summary Judgment (Doc. No. 14). Mr. Smoak, through counsel, seeks judicial review of an unfavorable administrative decision denying his application for disability insurance benefits under the Social Security Act.

Having reviewed and considered the parties' written arguments, the administrative record, and applicable authority, the Court finds that Defendant's decision to deny Plaintiff Social Security benefits is supported by substantial evidence. Accordingly, Plaintiff's Motion for Summary Judgment will be **DENIED**; Defendant's Motion for Summary Judgment will be **GRANTED**; and the Commissioner's decision **AFFIRMED**.

## I. BACKGROUND

On February 23, 2020, Plaintiff applied for benefits under Title II of the Social Security Act, alleging that he had been disabled since November 1, 2019 (*See* Tr. 17). Plaintiff's application was denied both on its first review and upon reconsideration. (*Id.*). After conducting a hearing on July 1, 2021, the Administrative Law Judge ("ALJ") denied Plaintiff's application in a decision

1

dated August 2, 2021. (Tr. 17-29). After applying the five-step sequential evaluation process, the ALJ found that Plaintiff has not been under a disability within the meaning of the Social Security Act during the relevant period.

The Appeals Council denied Plaintiff's request for review and thus the ALJ's decision now stands as the Commissioner's final decision. (Tr. 1). Plaintiff has timely requested judicial review under 42 U.S.C § 405(g) and the matter is ripe for the Court's consideration.

## II. THE COMMISSIONER'S DECISION

The ALJ followed the required five-step sequential evaluation process established by the Social Security Administration to determine whether Plaintiff was disabled under the law during the relevant period. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of his disability. At step two, she found that Plaintiff had the following medically determinable severe impairments: posttraumatic stress disorder (PTSD), depression, anxiety, polysubstance abuse, idiopathic hypersomnia, gastroesophageal reflux disease (GERD), obesity, degenerative disc disease, cervical radiculopathy (20 CFR 404.1520(c)). (Tr. 19). However, at step three, the ALJ found that the Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, App. 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). (Tr. 20). The ALJ then determined that Plaintiff had the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except avoid workplace hazards; able to sustain attention and concentration for two hours at a time and can perform unskilled work and carry out routine tasks, but no work requiring a production rate or demand pace; avoid work environments dealing with crisis situations, complex decision making, or constant changes in a rout setting; frequent but not continuous contact or interactions with

2

supervisors, only occasional contact or interactions with coworkers, and no public contact or interactions.

At step four, the ALJ found that Plaintiff could not perform his past relevant work as a shipping receiving clerk and marine. (Tr. 27-28). At step five, the ALJ concluded that jobs existed in significant numbers in the national economy that Plaintiff – given his age (32), high school education, work experience, and RFC—could perform, including representative occupations at the medium, unskilled level of work such as stores laborer DOT 922.687-058 with 60,000 jobs nationally; hand packager DOT 920.587-018 with 40,000 jobs nationally; and industrial cleaner DOT 381.687-018 with more than 100,000 jobs nationally. (Tr. 28). Thus, the ALJ found that Plaintiff was not disabled under the Social Security Act from November 1, 2019, through the date of her decision.

### III. DISCUSSION

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Bird v. Comm'r of SSA*, 699 F.3d 337, 340 (4th Cir. 2012); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In *Smith v.*

3

*Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986), *quoting Richardson*, 402 U.S. at 401, the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*See also Shinaberry v. Saul*, 952 F.3d 113, 120 (4th Cir. 2020); *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not the district court's place to "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Smith*, 795 F.2d at 345; *Blalock*, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982). Yet in undertaking this review, "we do not reflexively rubber-stamp an ALJ's findings." *Lewis v. Berryhill*, 858 F.3d 858, 870 (4th Cir. 2017).

Plaintiff raises two challenges to the ALJ's decision: (1) the ALJ erred by failing to adequately account for his idiopathic hypersomnia in the RFC and (2) the ALJ's appointment violates the Appointments Clause.

The ALJ is solely responsible for assessing a claimant's RFC, 20 C.F.R. §§ 404.1546(c) & 416.946(c) and, again, the task for this Court is not to determine how it would rule on Plaintiff's claim for disability in the first instance, but rather only whether there is substantial evidence to support the ALJ's ruling. The substantial evidence standard assumes a zone of choice within which the ALJ can decide either for or against the claimant, without interference by the courts. A decision is not subject to reversal just because substantial evidence would have supported a contrary

4

decision. *See Dunn v. Colvin*, 607 Fed. Appx. 264, 274 (4th Cir. 2015). With respect to Plaintiff's sleep disorder, the record reflects that the ALJ fully considered Plaintiff's complaints along with all the medical evidence and other circumstances (including that the Plaintiff "drinks throughout the day" and "drinks at least 6 to 12 alcoholic drinks a day") in determining whether to include any additional specific accommodation related to Plaintiff's alleged sleepiness during the day to the RFC. (Tr. 24). As part of that review, the ALJ also concluded that treatment has been "generally successful" in controlling Plaintiff's "disabling symptoms." (Tr. 23). Accordingly, the Court finds that the ALJ's RFC ruling is supported by substantial evidence and ought not be remanded.

As for Plaintiff's second argument, the Court finds that acting Commissioner Berryhill was validly serving under the Federal Vacancies Reform Act ("FVRA"). The FVRA prescribes that an acting official may serve "for no longer than 210 days beginning on the date the vacancy occurs; or ... once a first or second nomination for the office is submitted to the Senate, from the date of such nomination for the period that the nomination is pending in the Senate." 5 U.S.C. § 3346(a)(1)-(2). For vacancies existing during the first 60 days after a Presidential transition, the 210-day period runs from the later of 90 days after inauguration or 90 days after the vacancy. *Id.* § 3349a(b). If a first nomination does not result in a confirmation, an acting official may serve for another 210 days, *id.* § 3346(b)(1), and during a second nomination, *id.* § 3346(b)(2)(A). If the second nomination fails, then an acting official may serve for another 210 days. *Id.* § 3346(b)(2)(B).

Nancy Berryhill, then the Deputy Commissioner of Operations for SSA, was designated Acting Commissioner on January 21, 2017, and served until November 16, 2017, when her initial 210-day period for acting service expired. On April 17, 2018, President Trump nominated Andrew Saul to be the Commissioner of SSA. Upon submission of the nomination, Ms. Berryhill resumed

5

her service as Acting Commissioner during the nomination's pendency and served until Mr. Saul was sworn in as Commissioner. On July 16, 2018, Acting Commissioner Berryhill ratified the appointment of all SSA ALJs and approved them as her own.

Other courts have considered this issue and have found that § 3346(a)(2) "contains a 'spring-back' provision that enabled Berryhill to resume her role as Acting Commissioner as of the date that Andrew Saul was nominated for Commissioner in April 2018." *Thomas S. v. Comm'r*, No. C21-05213-MAT, 2022 WL 268844, at *3 (W.D. Wash. Jan. 28, 2022); *see also Reuter v. Saul*, No. 19-CV-2053-LRR, 2020 WL 7222109, at *15 n.11 (N.D. Iowa May 29, 2020), *adopted by*, 2020 WL 6161405, at *6 (N.D. Iowa Oct. 21, 2020); 23 Op. O.L.C. 60, 68 (Mar. 22, 1999); *Nw. Immigrant Rts. Proj. v. U.S. Citizenship & Immigr. Servs.*, 496 F. Supp. 3d 31, 57-58 (D.D.C. 2020); *but see Brian T.D. v. Kijakazi*, 2022 WL 179540, (D. Minn. Jan. 20, 2022). This Court agrees with this authority. Indeed, the plain language of 5 U.S.C. § 3346 allows for Ms. Berryhill to have resumed her role as Acting Commissioner on the date that Andrew Saul was nominated. Consequently, she had the necessary statutory authority to ratify the appointment of the ALJs in 2018 and thus Plaintiff's second argument fails.

In sum, the Court concludes that the ALJ applied the correct legal standards and her conclusion that Plaintiff was not disabled is supported by substantial evidence. Therefore, the ALJ's decision will be affirmed.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED:**

Plaintiff's Motion for Summary Judgment (Doc. No. 11) is **DENIED**; Defendant's Motion for Summary Judgment (Doc. No. 14) is **GRANTED**; and the Commissioner's decision is **AFFIRMED.**

**SO ORDERED ADJUDGED AND DECREED.**

Signed: September 29,

*/s/ Kenneth D. Bell*

Kenneth D. Bell
United States District Judge